UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MICHELS CORPORATION, *et al*,

*Plaintiffs*,

v.

TRUCKING EMPLOYEES OF NORTH
JERSEY WELFARE FUND, INC. -
PENSION FUND,

*Defendant*.

Civil Action No. 16-00073

**OPINION**

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court by way of the motion to dismiss for lack of subject matter jurisdiction filed by Defendant Trucking Employees of North Jersey Welfare Fund, Inc. - Pension Fund (the "Fund" or "TENJ Fund"). D.E. 37. Plaintiffs Michels Corporation, Henkels & McCoy, Inc., Phillips & Jordan, Inc. (collectively the "Contributing Employers"),[1] and the Pipe Line Contractors Association (individually the "PLCA" and collectively "Plaintiffs") filed a brief in opposition to which the Fund replied. D.E. 41, 43. The Court reviewed the submissions in support and in opposition, and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, the TENJ Fund's motion is **DENIED**.

**I.   BACKGROUND**[2]

---

[1] After the TENJ Fund submitted this motion, Plaintiffs filed their First Amended Complaint ("FAC"), to, among other things, add an additional Contributing Employer, Phillips & Jordan, Inc., as a plaintiff. The parties agreed that the current motion would apply to the FAC, and that the briefing schedule and return date for the pending motion would remain unchanged. D.E. 40.

[2] The factual background is taken from the FAC. D.E. 38.

Plaintiffs seek to recover contributions that they claim to have mistakenly made to the TENJ Fund, a multiemployer pension plan under ERISA, 29 U.S.C. § 1001 *et seq.* FAC ¶¶ 1, 23. The PLCA is a trade organization whose members "are engaged in the construction and maintenance of pipe lines for natural gas and petroleum." *Id.* ¶¶ 2, 19. PLCA members are engaged in construction projects throughout the country. *Id.* ¶ 29. The Contributing Employers are members of the PLCA as well as "employers" under the Labor Management Relations Act, 29 U.S.C. § 141 *et seq.* ("LMRA") and the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). *Id.* ¶¶ 2, 20-22.

By way of background, if an ERISA employer stops contributing to an underfunded multiemployer pension plan, in full or partially, that employer is usually liable to the plan for withdrawal liability, or in other words, for its pro rata share of the plan's underfunding. *Id.* ¶ 26; *see also* 29 U.S.C. §§ 1381, 1383, 1385. Due to the nature of the construction industry, however, Congress created the "Construction Rule" to protect employers in the industry from incurring withdrawal liability under certain circumstances. FAC ¶ 7. The rule was created because upon the completion of a construction project, which are often of limited duration, an employer stops paying its employees and stops making contributions to the applicable fund for union employees. In doing so, the employer technically "withdraws" from the fund, such that it could be responsible for withdrawal liability. *Id.* ¶ 28. Without the benefit of the Construction Rule, employers may be liable for large withdraw liability penalties at the end of every completed construction project. *Id.* ¶ 32.

The Construction Rule applies to employers that have "an obligation to contribute under a plan for work performed in the building and construction industry." *Id.* ¶ 27. The rule also permits "[e]ach non-construction industry multiemployer plan wanting the Construction Rule to apply to

2

its construction employees [to] amend its plan 'to provide that [the Construction Rule] applies to its construction industry employers.'" *Id.* (citing 29 U.S.C. § 1383(b)(1)(B)) (internal brackets omitted).

The PLCA and the International Brotherhood of Teamsters (the "IBT") operate under a collective bargaining agreement (the "CBA") that addresses, among other things, the conditions of employment for IBT members who work on PLCA member jobs. *Id.* ¶¶ 3-4. The Contributing Employers, as members of the PLCA, are subject to the CBA. When IBT members work on these jobs, the CBA provides that "PLCA members are required to contribute to the pension plan designated by the local union where the work is being performed." *Id* ¶ 5. The CBA, however, also indicates that "PLCA Members [are] obligated to contribute to a multiemployer pension plan *only* if the plan [is] covered by the Construction Rule." *Id.* ¶ 33. As a result, "PLCA members have no obligation to contribute to a multiemployer pension plan if it is not covered by the construction industry withdrawal liability rule." *Id.* ¶¶ 6; 33. Thus, the CBA protects PLCA members, including the Contributing Employers, by ensuring that they are subject to the Construction Rule and not subject to the withdrawal liability.

During "pre-job conferences required by the CBA," IBT officials identified the TENJ Fund as the multiemployer pension fund that the Contributing Employers were required to contribute to on behalf of "non-traveler employees." *Id.* ¶ 37. Non-traveler employees are local union members. Plaintiffs claim that they "reasonably and mistakenly believed that the Fund had adopted the Construction Rule." *Id.* ¶ 40. In reality, however, the Fund had not adopted the rule. *Id.* ¶ 34.

In late 2012, the Contributing Employers learned that the TENJ Fund had not adopted the Construction Rule and subsequently stopped contributing to the Fund. *Id.* ¶ 43. IBT acknowledged that pursuant to the CBA, PLCA members were not obligated to contribute to the

TENJ Fund because the Fund had not adopted the Construction Rule. *Id.* ¶ 44. After realizing their mistake, Plaintiffs repeatedly asked the TENJ Fund to conclude that the contributions were made under "a mistake of fact," and return the money. The TENJ Fund, however, has not returned the money or made a decision as to whether there was a mistake. *Id.* ¶¶ 12-16.

Plaintiffs filed their Complaint on January 6, 2016. D.E. 1. Plaintiffs seek a declaratory judgment stating that the Contributing Employers had no obligation to contribute to the TENJ Fund and that the Fund must return all contributions to the Contributing Employers because the payments were made under a "mistake of fact." FAC ¶¶ 17, 47-54. Plaintiffs also bring claims for restitution and unjust enrichment pursuant to federal common law. *Id.* ¶¶ 55-64. Plaintiffs indicate that the Court has jurisdiction pursuant to 28 U.S.C. § 1331; Section 301 of the LMRA, 29 U.S.C. § 185; and Section 4301(a)(1) of ERISA, 29 U.S.C. § 1451.[3] *Id.* ¶ 24.

The TENJ Fund filed its answer followed by the current motion to dismiss. D.E. 37. The Fund argues that the Court lacks subject matter jurisdiction. The TENJ Fund argues that Plaintiffs cannot bring this action under Section 1451 of ERISA because the section is limited to withdrawal liability, which is not directly addressed in this matter. Def's Br. at 5, Def's Reply at 6-7. The TENJ Fund also contends that Plaintiffs cannot bring claims pursuant to Section 301 of the LMRA because the Fund is not a labor organization, it is not a signatory to the CBA, and this is not an action for breach of a CBA. Def's Br. at 5-9; Def's Reply at 7-9.

Plaintiffs counter that the TENJ Fund ignores clear Third Circuit precedent that establishes subject matter jurisdiction, under 28 U.S.C. § 1331, for federal common law claims seeking to

---

[3] Plaintiffs originally pled that the Court also had subject matter jurisdiction pursuant to Section 502 of ERISA, 29 U.S.C. § 1132. The FAC, however, omits Section 502, and Plaintiffs confirmed that they are no longer relying on Section 502 to establish subject matter jurisdiction. Plfs' Br. at 9 n.2. Therefore, the Court will disregard the parties' arguments as to Section 502.

4

recover mistaken ERISA contributions. Plfs' Br. at 12-15. Plaintiffs also argue that the TENJ Funds' arguments regarding Section 1451 are merits based, not jurisdictional. *Id.* at 20-23. Regardless, Plaintiffs assert that their claims fall squarely within the purview Section 1451, which permits parties to bring claims "regarding the operation and administration of multiemployer pension plans." *Id.* at 21. Finally, Plaintiffs maintain that the Court has subject matter jurisdiction pursuant to Section 301 of the LMRA, and that the TENJ Fund's arguments misconstrue the Amended Complaint and "conflict with controlling statutory and judicial authority." Plfs' Br. at 23-26.

## II. LEGAL STANDARD

The Fund argues that the FAC should be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Pursuant to Fed. R. Civ. P. 12(h)(3), a complaint must be dismissed whenever the Court determines that it lacks subject matter jurisdiction. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 437 (D.N.J. 1999). Consequently, a Rule 12(b)(1) motion may be brought at any time. *Id.*

In deciding a Rule 12(b)(1) motion, a court must first determine whether the party presents a facial or factual attack because the distinction determines how the pleading is reviewed. A facial attack "contests the sufficiency of the complaint because of a defect on its face," whereas a factual attack "asserts that the factual underpinnings of the basis for jurisdiction fails to comport with the jurisdictional prerequisites." *Elbeco Inc. v. Nat'l Ret. Fund*, 128 F. Supp. 3d 849, 854 (E.D. Pa. 2015) (quoting *Moore v. Angie's List, Inc.*, 118 F. Supp. 3d 802, 806 (E.D. Pa. 2015)). For a facial attack, "the Court must consider the allegations of the complaint as true," much like a Rule 12(b)(6) motion to dismiss. *Bd. of Trs. of Trucking Emps of N. Jersey Welfare Fund, Inc. v. Caliber Auto Transfer, Inc.*, No. 09-6447, 2010 WL 2521091, at *8 (D.N.J. June 11, 2010) (quoting *Petruska v.*

*Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006)). For a factual attack, "the allegations of the complaint have no presumptive truthfulness and the court must weigh the evidence presented by the parties." *Id.* (citing *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 290-91 (3d Cir. 2006)). Regardless of whether the attack is facial or factual, "the Plaintiff has the burden to prove that the Court has jurisdiction." *Id.* (citing *Petruska*, 462 F.3d at 302).

The TENJ Fund fails to state whether it is mounting a facial or factual jurisdictional attack. Yet, the TENJ Fund does not appear to be raising a factual attack because it does not provide any evidence outside the pleadings to support its argument. Instead, the TENJ Fund argues that the Court does not have subject matter jurisdiction due to the nature of Plaintiffs' claims. This amounts to a facial attack. *See, e.g., id.* (conducting a facial attack due to argument that the type of claims plaintiffs asserted did not arise under federal law).

### III. DISCUSSION

Plaintiffs allege that the TENJ Fund "ignores binding Third Circuit precedent that unequivocally provides this Court with jurisdiction over Plaintiffs' claims" under 28 U.S.C. Section 1331. Plfs' Br. at 2. The Court agrees. Section 1331 provides district courts with jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In *Airco Indus. Gases, Inc. Div. of the BOC Grp., Inc. v. Teamsters Health & Welfare Pension Fund of Phila. & Vicinity*, 850 F.2d 1028, 1033-34 (3d Cir. 1988), the Third Circuit upheld the district court's determination that it had jurisdiction over an employer's claims to recover mistaken contributions to an ERISA fund. The Third Circuit determined that Section 1331 "conferred upon [the federal courts] subject matter jurisdiction to determine the existence of a federal common law cause of action based on unjust enrichment." *Airco Indus.*, 850 F.2d at 1034. Because the issue was not presented on appeal, however, the Third Circuit did not

address the *validity* of the employer's federal common law claim for unjust enrichment. *Airco Indus.*, 850 F.2d at 1034.

A year later, the Third Circuit concluded that "there is an equitable cause of action by employers for the recovery of contributions erroneously paid to pension funds due to a mistake of fact or law." *Plucinski v. I.A.M. Nat'l Pension Fund*, 875 F.2d 1052, 1057 (1989); *see also Luby v. Teamsters Health, Welfare, & Pension Trust Funds*, 944 F.2d 1176, 1186 (3d Cir. 1991) (concluding that ERISA fund had a federal common law right to restitution to recover mistaken payments from trust); *Mazza v. Sheet Metal Workers' Nat'l Pension Fund*, 410 F. App'x 464, 467-68 (3d Cir. 2010) (reiterating that there is a federal common law equitable remedy for mistaken contributions in the context of Section 403(c) of ERISA). Consequently, the Court has subject matter jurisdiction over Plaintiffs' claims to recover their mistaken payments to the TENJ Fund.

The TENJ Fund concedes that this Court has jurisdiction over Count Three, the federal common law unjust enrichment claim. The TENJ Fund, however, takes the position that jurisdiction is lacking for Counts One and Two, Plaintiffs' claims for a declaratory judgment and restitution, respectively. Def's Reply at 4.

The Fund's argument, however, lacks merit. First, Counts Two and Three appear to be essentially the same, as the typical remedy for an unjust enrichment claim is restitution. *See In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. 2009) ("It has long been recognized that unjust enrichment is an equitable cause of action meant to provide restitution to a party who has conferred a benefit on another under circumstances where the retention of that benefit would be inequitable." (citing *Restatement (First) of Restitution* § 1 (1937)); *see also Luby*, 944 F.2d at 1186 (recognizing that plaintiff may be entitled to restitution pursuant to the federal common law doctrine of unjust enrichment).

In addition, the fact that Plaintiffs included a claim for declaratory judgment does not impact the Court's decision as to jurisdiction. The Declaratory Judgment Act does not grant courts subject matter jurisdiction because it "is procedural: it enlarges the range of remedies available to the federal courts, but does not extend their jurisdiction." *Levy-Tatum v. Navient Sols., Inc.*, --- F. Supp. 3d ---, 2016 WL 1696811, at *4 (E.D. Pa. Apr. 28, 2016) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)). In other words, the Declaratory Judgment Act "presupposes the existence of a judicially remediable right," and cannot be used as an independent jurisdictional basis. *Id.* In *Levy-Tatum*, for example, the court concluded that the plaintiff could not use the Declaratory Judgment Act to obtain relief under statutes that did not provide a private right of action. *Id.* In contrast, it is clear that the Court has jurisdiction here through the federal common law, as discussed above. Thus, the Court has subject matter jurisdiction over the declaratory judgment claim. Plaintiffs' use of the Declaratory Judgment Act is an attempt to obtain additional relief, in addition to the return of their mistaken contributions.

Finally, the TENJ Fund's arguments in this regard attack the adequacy of Plaintiffs' pleading rather than the Court's subject matter jurisdiction. But whether a party's claims are sufficiently pled is a separate issue from a determination as to the Court's ability to exercise jurisdiction. *See Airco Indus.*, 850 F.2d at 1032 ("The question of whether the district court had subject matter jurisdiction pursuant to this statute is not whether Airco had a *valid* cause of action against the Fund under federal common law."). Here, all three claims in the FAC are equitable causes of action through which Plaintiffs' attempt to have the mistaken contributions returned; they all allegedly arise under the laws of the United States. The Court, therefore, has subject matter jurisdiction over this matter.

Because the Court has subject matter jurisdiction, the Court does not address the other

arguments raised by the Fund.

### IV.    CONCLUSION

For the foregoing reasons, Defendant Trucking Employees of North Jersey Welfare Fund, Inc. - Pension Fund's motion is **DENIED.**  An appropriate order accompanies this opinion.

Dated: December 15, 2016

                                                       _____
                                                      John Michael Vazquez, U.S.D.J.